IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

JON M.,[1]

        Plaintiff,

v.

COMMISSIONER, SOCIAL
SECURITY ADMINISTRATION,

        Defendant.

No. 3:22-cv-00207-HZ

OPINION & ORDER

Bruce Whitman Brewer
Law Offices of Bruce W. Brewer, PC
P.O. Box 421
West Linn, OR 97068

    Attorney for Plaintiff

Renata Gowie
Assistant United States Attorney
1000 Louisiana, Suite 2300
Houston, TX 77002

Sarah Elizabeth Moum
Social Security Administration
Office of the General Counsel
6401 Security Boulevard
Baltimore, MD 21235

    Attorneys for Defendant

---

[1] In the interest of privacy, this Opinion uses only the first name and the initial of the last name of the non-governmental party or parties in this case. Where applicable, this Opinion uses the same designation for a non-governmental party's immediate family member.

1 – OPINION & ORDER

HERNÁNDEZ, District Judge:

Plaintiff Jon M. brings this action seeking judicial review of the Commissioner's final decision to deny disability insurance benefits ("DIB"). This Court has jurisdiction pursuant to 42 U.S.C. § 405(g). The Court affirms the Commissioner's decision.

## PROCEDURAL BACKGROUND

Plaintiff applied for DIB on May 31, 2016, alleging an onset date of April 30, 2012. Tr. 214-15.[2] Plaintiff's date last insured ("DLI") is December 31, 2013. His application was denied initially and on reconsideration. Tr. 125-26.

On May 23, 2018, Plaintiff appeared with counsel for a hearing before an Administrative Law Judge ("ALJ"). Tr. 20-39. On July 3, 2018, the ALJ found Plaintiff not disabled during the closed period of April 30, 2012 through December 31, 2013.[3] Tr. 35-51. The Appeals Council denied review. Tr. 1-7. Plaintiff appealed the matter to the United States District Court. On December 21, 2020, the District Court remanded the matter to the ALJ on the basis that there remained unresolved conflicts or ambiguities between Plaintiff's testimony and other evidence on the record.

On August 24, 2021, Plaintiff appeared with counsel for a hearing on remand. Tr. 1319-58. On October 8, 2021, the ALJ found Plaintiff not disabled during the closed period of April 30, 2012, through December 31, 2013, and, therefore, not entitled to benefits. Tr. 1291-1318. On February 8, 2022, Plaintiff appealed the ALJ's decision to this Court.

---

[2] Citations to "Tr." refer to the page(s) indicated in the official transcript of the administrative record, filed herein as Docket No. 8.
[3] On May 7, 2018, Plaintiff amended his alleged onset date to his date last insured: December 31, 2013. Despite Plaintiff's amendment, the ALJ found Plaintiff was not disabled from his original onset date through his date last insured.

## FACTUAL BACKGROUND

Plaintiff alleges disability during the relevant period due to thoracic spine injury, lumbar spine injury, multiple knee surgeries, bilateral arthritis in knees, auditory deficits, major depressive disorder, anxiety disorder, psychosocial disorder, asthma, and type II diabetes. Tr. 269. At the time of his amended alleged onset date, Plaintiff was 54 years old. Tr. 214. Plaintiff has a GED and some college course work. Tr. 52. Plaintiff has past relevant work experience as an autobody repair supervisor and motor vehicle and supplies sales representative. Tr. 1307.

## SEQUENTIAL DISABILITY EVALUATION

A claimant is disabled if they are unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A). Disability claims are evaluated according to a five-step procedure. *See Valentine v. Comm'r*, 574 F.3d 685, 689 (9th Cir. 2009) (in social security cases, agency uses five-step procedure to determine disability). The claimant bears the ultimate burden of proving disability. *Id.*

In the first step, the Commissioner determines whether a claimant is engaged in "substantial gainful activity." If so, the claimant is not disabled. *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987); 20 C.F.R. § 404.1520(b). In step two, the Commissioner determines whether the claimant has a "medically severe impairment or combination of impairments." *Yuckert*, 482 U.S. at 140–41; 20 C.F.R. § 404.1520(c). If not, the claimant is not disabled. *Id.*

In step three, the Commissioner determines whether the claimant's impairments, singly or in combination, meet or equal "one of a number of listed impairments that the [Commissioner]

3 – OPINION & ORDER

acknowledges are so severe as to preclude substantial gainful activity." *Yuckert*, 482 U.S. at 141; 20 C.F.R. § 404.1520(d). If so, the claimant is conclusively presumed disabled; if not, the Commissioner proceeds to step four. *Yuckert*, 482 U.S. at 141.

In step four, the Commissioner determines whether the claimant, despite any impairment(s), has the residual functional capacity (RFC) to perform their "past relevant work." 20 C.F.R. § 404.1520(e). If the claimant can perform past relevant work, the claimant is not disabled. If the claimant cannot perform past relevant work, the burden shifts to the Commissioner. In step five, the Commissioner must establish that the claimant can perform other work. *Yuckert*, 482 U.S. at 141–42; 20 C.F.R. § 404.1520(e)–(f). If the Commissioner meets their burden and proves that the claimant can perform other work that exists in the national economy, then the claimant is not disabled. 20 C.F.R. § 404.1566.

**THE ALJ'S DECISION**

At step one, the ALJ found Plaintiff did not engage in substantial gainful activity "as of his date last insured of December 31, 2013." Tr. 1297. At steps two and three, the ALJ determined that during the relevant period Plaintiff had the following severe impairments: "degenerative disc disease and degenerative joint disease of the spine; degenerative joint disease knee and shoulder; obesity; and carpal tunnel syndrome." *Id*. The ALJ, however, determined that Plaintiff's impairments did not meet or medically equal the severity of a listed impairment during the relevant period. Tr. 1298. The ALJ concluded that during the relevant period Plaintiff had the residual functional capacity to perform light work as defined in 20 C.F.R. § 404.1567(b) except:

> [H]e could stand and walk four hours total in an eight-hour workday. He could sit for four hours in an eight-hour workday. He could occasionally climb, stoop, crouch and crawl. [Plaintiff] could frequently handle and finger bilaterally. He could frequently reach overhead bilaterally.

4 – OPINION & ORDER

Tr. 1299. At step four, the ALJ concluded that during the closed period Plaintiff could perform his past relevant work as it was actually performed. Tr. 1307. Alternatively, the ALJ found at step five that Plaintiff could perform other work in the national economy during the relevant period. Tr. 1309. The ALJ, therefore, concluded that Plaintiff was not disabled during the relevant period. Tr. 1310.

## STANDARD OF REVIEW

A court may set aside the Commissioner's denial of benefits only when the Commissioner's findings "are based on legal error or are not supported by substantial evidence in the record as a whole." *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009)(internal quotation marks omitted). "Substantial evidence means more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (internal quotation marks omitted). The court considers the record as a whole, including both the evidence that supports and detracts from the Commissioner's decision. *Id.*; *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007). "Where the evidence is susceptible to more than one rational interpretation, the ALJ's decision must be affirmed." *Vasquez*, 572 F.3d at 591 (internal quotation marks and brackets omitted); *see also Massachi v. Astrue*, 486 F.3d 1149, 1152 (9th Cir. 2007)("Where the evidence as a whole can support either a grant or a denial, [the court] may not substitute [its] judgment for the ALJ's")(internal quotation marks omitted).

## DISCUSSION

Plaintiff contends the ALJ erred when he (1) partially rejected Plaintiff's testimony; (2) partially rejected the opinion of reviewing physician Steven Golub, M.D.; (3) relied on VE testimony "premised on a hypothetical question that did not include a function-by-function

5 – OPINION & ORDER

assessment" of Plaintiff's RFC; and (4) did not resolve a conflict between the VE's testimony and the Dictionary of Occupational Titles ("DOT").

I.      **Subjective Symptom Testimony**

Plaintiff alleges the ALJ erred when he partially rejected Plaintiff's testimony.

The ALJ is responsible for evaluating symptom testimony. SSR 16-3p, 2017 WL 5180304, at *1 (Oct. 25, 2017). "The ALJ 'engages in a two-step analysis to determine whether a claimant's testimony regarding subjective pain or symptoms is credible.'" *Putz v. Kijakazi*, No. 21-35733, 2022 WL 6943095, at *2 (9th Cir. Oct. 12, 2022)(quoting *Garrison v. Colvin*, 759 F.3d 995, 1014 (9th Cir. 2014)). First the ALJ determines "whether the claimant has presented objective medical evidence of an underlying impairment [that] could reasonably be expected to produce the pain or other symptoms alleged." *Putz*, 2022 WL 6493095, at *2 (quotation omitted). The claimant need not show the "impairment could reasonably be expected to cause the severity of the symptom . . . alleged; [the claimant] need only show that it could reasonably have caused some degree of the symptom." *Garrison*, 759 F.3d at 1014 (quotation omitted). "If the claimant satisfies the first step of this analysis, and there is no evidence of malingering, the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear[,] and convincing reasons for doing so." *Putz*, 2022 WL 6493095, at *2 (quotation omitted). See also *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 883 (9th Cir. 2006)(same).

When evaluating subjective symptom testimony, "[g]eneral findings are insufficient." *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998)(quotation omitted). "An ALJ does not provide specific, clear, and convincing reasons for rejecting a claimant's testimony by simply reciting the medical evidence in support of his or her residual functional capacity determination." *Brown-Hunter v. Colvin*, 806 F.3d 487, 489 (9th Cir. 2015). Instead, "the ALJ must specifically

6 – OPINION & ORDER

identify the testimony she or he finds not to be credible and must explain what evidence undermines the testimony." *Holohan v. Massanari*, 246 F.3d 1195 (9th Cir. 2001); *see also Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995)(The reasons proffered must be "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discount the claimant's testimony.").

The ALJ found Plaintiff's "medically determinable impairments could reasonably be expected to cause some of the alleged symptoms during the relevant period," but Plaintiff's "statements concerning the intensity, persistence and limiting effects of [his] symptoms are not entirely consistent with the medical evidence and other evidence in the record." Tr. 1300. The ALJ noted the Court's December 21, 2020 Opinion and Order remanding the matter to the ALJ, in which Judge Beckerman set out the following unresolved conflicts and/or ambiguities in the record:

> Plaintiff testified that he frequently needs assistance getting dressed and bathing due to his chronic pain, his house and yard work consists of watering the garden, washing his clothes, and "nothing else," he "no longer tend[s] to bees without [the] help of others," his impairments impact his ability to climb stairs, and he "fall[s] a lot" when walking or using stairs. (Tr. 60, 244-45, 247-48.) By contrast, other record evidence reflects that Plaintiff reported that he spent "6 months" cleaning up his father-in-law's "hoarder" house, getting the house ready to sell, and moving his father-in-law into assisted living; he used a "ladder" with "rung[s]" to access a tree stand for hunting; he dragged a "150 [pound] deer uphill"; he took his son deer hunting; he was able to "extract himself" from the tree stand's ladder when he got caught hanging upside down; he cleaned out a storage unit; he was a beekeeper; he "work[s] with bees on his property," which "involves ladders and climbing trees"; he "climbe[d] ladders" to "catch his bees. . . ." (Tr. 409-10, 499, 577-78, 583, 600, 603-04, 668, 671-72, 677, 679, 780-81, 805, 799, 809, 1023, 1056, 1169, 1170, 1182.)

Tr. 1406-07. At the August 24, 2021, hearing on remand Plaintiff testified he "spent a few hours a week" at his father-in-law's house "trying to locate a document that would be allowed to help

7 – OPINION & ORDER

his father-in-law move into assisted living" and that "over a three-month period . . . he supervised his four children's loading and unloading of stuff into dumpsters or drop boxes." Tr. 1339. Plaintiff also testified he did not drag a deer uphill, rather he "walked [about 200 yards] back to the barn and got a golf cart and connected the deer to the golf cart and . . . the golf cart was used to get the deer back to the barn." Tr. 1340. Plaintiff testified that after he slipped off the rung of the tree-stand ladder, he realized "hunting was something [he would] never be able to do again . . . [and] . . . that was the end of that." Tr. 1342. Plaintiff stated that he had his sons and his friends assist him with beekeeping "because [he] can't do an awful lot of the picking up . . . the bee boxes and stuff." Tr. 1342. Plaintiff noted he typically collected bee swarms while standing on the ground" or using a six-foot ladder. Tr. 1342-43.

The ALJ noted, however, that Plaintiff reported to David Bilstrom, M.D., examining physician, in November 2012 that "[f]or the last several months he has been clearing out possessions of his father-in-law. The house basically has been untouched for years." Tr. 396. In April 2013 Plaintiff reported to Lynne Carter, vocational counselor, that he left school in 2012 "to help his father-in-law, caring for him and moving him into an assisted living facility. Had to sell the father's home . . . [he was] a hoarder, took 6 months to clean it up and get it ready to sell." Tr. 409. The ALJ also noted Plaintiff reported to treating physician Ann Marie McCartney, M.D., on March 4, 2013, that he felt "sore and tired" because he "had to drag the 150 lb deer uphill." Tr. 651. In addition, Plaintiff stated at the hearing that after he got his knee caught in a rung of the hunting-stand ladder in March 2013, he knew he would never be able to hunt again, however, on April 25, 2013, he reported to Kuo Casey Chang, M.D., treating physician, that he "was stung by 27 yellow jackets" while hunting. Tr. 1012. In May 2013 Dr. Chang noted Plaintiff "is very concerned about yellow jacket sting[s] as he likes to go hunting." Tr. 811. In

July 2013 Dr. Chang advised Plaintiff that he could go hunting because [t]he risk of a reaction to yellow jacket sting is very small." Tr. 806. In December 2013 Dr. Chang reported Plaintiff "has not gone back hunting since [he is] on venom immunotherapy. It is still deer hunting season, and he is going back soon." Tr. 799. In December 2013 Plaintiff advised Jason Anderson, D.O., treating physician, that he had a return of low-back pain "after butchering a deer over a week ago." Tr. 2228. The record reflects that Plaintiff also went hunting after the relevant period. For example, in October 2015 Plaintiff reported to Dr. McCarney that he "[w]ent hunting recently and finds that he is not able to walk up the hill like he could before," but he "[h]as a goal of 7700 paces with his hunting pack and rifle - about 20 lbs." Tr. 583. In November 2015 Plaintiff stated he took his son hunting and "felt really good walking around and seeking evidence of the deer." Tr. 578.

The ALJ concluded that although Plaintiff "sought to explain many of the inconsistencies in the record regarding his activities, the record speaks for itself regarding what is actually recorded in the medical records." Tr. 1303. The ALJ noted Plaintiff's statements "were made to his providers at or near the time of the events, and are very specific in nature, such as his report that he dragged a deer 150 feet up a hill," and "contradict his allegations at both the original hearing and the remand hearing." *Id.* The ALJ found that although Plaintiff "now disavows those statements made to his providers, the record fully demonstrates a significant inconsistency, [which] . . . detracts from the overall persuasiveness of his subjective complaints." *Id.*

The Court concludes on this record that the ALJ did not err when he partially rejected Plaintiff's testimony regarding the intensity, persistence, and limiting effects of his symptoms because the ALJ provided specific, clear, and convincing reasons supported by substantial evidence in the record for doing so.

**II.     Medical Opinion Evidence**

Plaintiff contends the ALJ erred when he gave "little weight" to Dr. Golub's testimony at the May 23, 2018, hearing.

Social security law recognizes three types of physicians: (1) treating, (2) examining, and (3) nonexamining. *Garrison v. Colvin*, 759 F.3d 995, 1012 (9th Cir. 2014). For application filed before March 27, 2017, generally, more weight is given to the opinion of a treating physician than to the opinion of those who do not actually treat the claimant. *Id.*; 20 C.F.R. § 404.1527(c)(1)-(2). More weight is given to an examining physician than to a nonexamining physician. *Garrison*, 759 F.3d at 1012.

If the treating physician's medical opinion is supported by medically acceptable diagnostic techniques and is consistent with other substantial evidence in the record, the treating physician's opinion is given controlling weight. *Ghanim v. Colvin*, 763 F.3d 1154, 1160 (9th Cir. 2014); *Orn v. Astrue*, 495 F.3d 625, 631 (9th Cir. 2007). If the treating physician's opinion is not contradicted by another physician, the ALJ may reject it only for "clear and convincing" reasons supported by substantial evidence in the record. *Ghanim*, 763 F.3d at 1160-61.

At the May 23, 2018, hearing Dr. Golub was called as a medical expert and testified that it was "hard to know what to make of" Plaintiff's August 21, 2013 MRI. Tr. 49. Specifically, Dr. Golub noted the August 2013 MRI reflected Plaintiff had severe degenerative disc disease with broad-based disc bulging at L5-S1, moderate degenerative disc disease with broad-based bulging at L4-5 and L3-4, and severe disc disease with broad-based bulging at L2-3. Tr. 1289-90. The August 2013 MRI also reflected a "1 cm x 8 mm x 1.6 cm central right paracentral disc extrusion at the L4-5 level with . . . extension along the posterior body of L4." Tr. 1290.

Dr. Golub noted, however, that an MRI taken three years later showed "significant resolution in that three-year period." Tr. 49. Dr. Golub stated the August 2013 MRI was "certainly significant" and someone with "this serious of an MRI . . . could [have] significant symptomology" such as needing to lie down, take extra rest breaks, and similar. Tr. 50. Dr. Golub, however, was unable to conclude definitively whether Plaintiff had a listing level impairment prior to the end of 2013 because one "can't really go only on MR findings because there is such variability between MR findings and clinical manifestations, it's hard to draw that conclusion." Tr. 49, 51. Dr. Golub noted "[y]ou need to have something on exam, like straight leg raise, or diminished reflexes, or sensory decreases." Tr. 51. Dr. Golub, however, did not find anything of that nature in the reports of Plaintiff's primary care physician, Anne Marie Clauson. In the July 31, 2018 decision the ALJ gave moderate weight to Dr. Golub's opinion on the basis that Dr. Golub did not provide a clear residual functional capacity regarding Plaintiff's ability to work prior to his December 31, 2013, date last insured. Judge Beckerman concluded in the December 21, 2020, Opinion and Order that the ALJ erred because he failed to note that Dr. Golub "overlooked relevant evidence" of various positive straight-leg raises and seated slump tests that could have supported the 2013 MRI findings.

     In the August 24, 2021, decision the ALJ gave "little weight" to Dr. Golub's testimony that the August 2013 MRI "would certainly indicate that at the time it . . . could result in significant symptomology" and "might require lying down, extra rest breaks, absences from work on bad days, [and] various things like that." Tr. 50. The ALJ noted Plaintiff's activities during the relevant period were not consistent with the need to lie down or take extra breaks. As noted, Plaintiff assisted his father-in-law to clean out his house for months, went hunting, dragged a 150-pound deer uphill, and climbed ladders to keep bees. In addition, the ALJ noted

11 – OPINION & ORDER

reviewing physician Martin Kehrli, M.D., opined that during the relevant period Plaintiff could stand and/or walk six hours in an eight-hour workday; sit six hours in an eight-hour workday; and occasionally lift 20 pounds, climb ramps and stairs, climb ladders, balance, stoop, kneel, crouch, and crawl. Tr. 121-22. The ALJ noted that Dr. Kehrli had the benefit of reviewing all of Plaintiff's relevant medical records and, therefore, had a full longitudinal picture of Plaintiff's conditions.

On this record the Court concludes the ALJ did not err when he gave little weight to Dr. Golub's opinion because the ALJ provided clear and convincing reasons for doing so based on substantial evidence in the record.

### III.  Vocational Issues

Plaintiff asserts the ALJ erred when he relied on VE testimony "premised on a hypothetical question that did not include a function-by-function assessment" of Plaintiff's RFC pursuant to Social Security Ruling ("SSR") 96–8p. The Ninth Circuit, however, has held that a function-by-function analysis of a claimant's medical conditions or impairment is "unnecessary" when "the ALJ applied the proper legal standard and his decision is supported by substantial evidence." *Bayliss v. Barnhart*, 427 F.3d 1211, 1217 (9th Cir. 2005)(citation omitted). In *Bayliss* the court concluded the ALJ did not err when he did not conduct a function-by-function analysis of the claimant's medical conditions when evaluating the claimant's RFC determination because in making the RFC determination "the ALJ took into account those limitations for which there was record support that did not depend on Bayliss's subjective complaints." *Id.*

Here the ALJ included in Plaintiff's RFC all of Plaintiff's limitations that were supported by the record. The ALJ did not include all of the limitations set out in Plaintiff's testimony, however, the Court has concluded the ALJ did not err when he partially rejected Plaintiff's

testimony. Accordingly, the Court concludes the ALJ did not err when he did not conduct a function-by-function assessment" of Plaintiff's RFC.

### IV. VE Testimony and the DOC

The VE testified at the August 24, 2021 hearing that an individual who could perform the full range of light work "except [he] [could] stand and walk for four hours in an eight-hour workday and could sit for four hours in an eight-hour workday" could perform Plaintiff's past relevant work as Plaintiff actually performed it. Tr. 1347-48. The VE also testified that an individual with those limitations could perform other work in the national economy as an electrical accessories assembler, marker, and small parts assembler. Tr. 1348-49. The VE stated her testimony was consistent with the DOT. Tr. 1350. The ALJ accepted the testimony of the VE and concluded at step four that Plaintiff could perform his past relevant work as he actually performed it and at step five that Plaintiff could perform other work in the national economy.

Plaintiff alleges the ALJ erred when he failed to resolve a conflict between the VE's testimony and the DOT. Specifically, Plaintiff notes the ALJ determined at step four that the VE's "testimony is consistent with the information contained in the" DOT. Tr. 1308. The ALJ, however, determined at step five that the VE's testimony is consistent with the information contained in the DOT, but "the jobs identified by the [VE] and some other similar jobs at the light exertional level, allow for working in a standing or walking position for four hours instead of the typical six hours." Tr. 1310. Plaintiff asserts, therefore, that the ALJ erred

> after . . . expressly disavowing the presence of any conflict [between the VE's testimony and the DOT], and failing to address the VE's assertion that her testimony was not in conflict with the DOT, the ALJ made oblique reference to the conflict that exists between the light level jobs identified by the VE (jobs which the ALJ correctly noted require six hours of standing/walking) and the hypothetical question which limited Plaintiff to being on his feet for a total of four hours per workday.

13 – OPINION & ORDER

Pl. Brief at 5.

### A.  Step Four

"At step four of the sequential analysis, the claimant has the burden to prove that he cannot perform his prior relevant work 'either as actually performed or as generally performed in the national economy.'" *Carmickle v. Comm'r*, 533 F.3d 1155, 1166 (9th Cir. 2008)(quoting *Lewis v. Barnhart*, 281 F.3d 1081, 1083 (9th Cir. 2002)). Although the burden of proof lies with the plaintiff at step four, the ALJ has a duty to make the requisite factual findings to support his conclusion. SSR 82-62.  *See* 20 C.F.R. §§ 404.1571, 404.1574, and 404.1565. The ALJ must make these findings based on "'the [RFC] and the physical and mental demands' of the claimant's past relevant work." *Pinto v. Massanari*, 249 F.3d 840, 844-45 (9th Cir. 2001)(quoting 20 C.F.R. § 404.1520(e)). When "defining a claimant's past relevant work as actually performed, the ALJ may use 'a properly completed vocational report' and 'the claimant's own testimony.'" *Albritten v. Berryhill*, No. CV 17-0925-JPR, 2018 WL 3032860, at *3 (C.D. Cal. June 14, 2018)(quoting *Pinto v. Massanari*, 249 F.3d 840, 845 (9th Cir. 2001)). "To ascertain the requirements of occupations as generally performed in the national economy, the ALJ may rely on VE testimony or information from the DOT." *Albritten,* 2018 WL 3032860, at *3 (citations omitted).

The ALJ found that during the relevant period Plaintiff could perform a full range of light work, except, in relevant part that Plaintiff could "stand and walk four hours total in an eight-hour workday." Plaintiff testified and noted in his vocational report that his past relevant work as he actually performed it did not require him to stand and/or walk for more than four hours per day. Tr. 1347-48. The VE found an individual with Plaintiff's limitations could perform that work as Plaintiff actually performed it "not [as it is generally] performed based on

the DOT." Tr. 1347. The Court concludes Plaintiff's testimony, in combination with the VE's statement that an individual with Plaintiff's limitations could perform Plaintiff's past relevant work as it was actually performed is sufficient to resolve any apparent conflict between the VE's testimony and the DOT.

Accordingly, the Court concludes the ALJ did not err when he relied on the VE's testimony and concluded Plaintiff could perform his past relevant work during the relevant period as he actually performed it because the ALJ provided legally sufficient reasons based on substantial evidence in the record for doing so.

**B.    Step Five**

If the Commissioner reaches Step Five, he must determine whether the claimant is able to do any work that exists in the national economy. 20 C.F.R. § 416.920(a)(4)(v). Here the burden shifts to the Commissioner to show a significant number of jobs exist in the national economy that the claimant can perform. *Lockwood v. Comm'r*, 616 F.3d 1068, 1071 (9th Cir. 2010). When determining whether a claimant can perform work that exists in the national economy, "the ALJ may rely on an impartial vocational expert to provide testimony." *Gutierrez v. Colvin*, 844 F. 3d 804, 807 (9th Cir. 2016)(citing *Hill v. Astrue*, 698 F.3d 1153, 1161 (9th Cir. 2012)). In addition,

> [t]he [DOT], [which] . . . details the specific requirements for different occupations, [also] guides the analysis. If the expert's opinion that the applicant is able to work conflicts with, or seems to conflict with, the requirements listed in the [DOT], then the ALJ must ask the expert to reconcile the conflict before relying on the expert to decide if the claimant is disabled.

*Gutierrez,* 844 F.3d at 808 (citation omitted). "[N]ot all potential conflicts between [a VE's] job suitability recommendation and the [DOT's] listing . . . for an occupation will be apparent or obvious." *Id*. "For a difference between an expert's testimony and the [DOT's] listings to be

15 – OPINION & ORDER

fairly characterized as a conflict, it must be obvious or apparent. This means . . . the testimony must be at odds with the [DOT's] listing of job requirements that are essential, integral, or expected." *Id.*

As noted, the ALJ found based on the VE's testimony that Plaintiff could perform other jobs that existed in the national economy during the relevant period. The VE testified that a hypothetical individual with Plaintiff's limitations during the relevant period including the limitation to stand and/or walk no more than four hours in an eight-hour workday could work as an electrical accessory assembler, marker, and small parts assembler. Tr. 1355-56. The VE explained

> [T]he DOT does have a group of jobs that are designated at the light level based on the lift and carry requirement and not on what most people consider light as the stand . . ., walk and sit requirement. [Electrical accessory assembler, marker, and small parts assembler are] three examples of that particular group. . . . The walking, standing and sitting varies throughout the day, but it's about four hours of sitting and about four hours of stand and walk.

Tr. 1356-57.

The Court concludes the VE adequately explained any apparent conflict with the DOT in her identification of electrical accessory assembler, marker, and small parts assembler as jobs that an individual with Plaintiff's limitations could do during the relevant period. Accordingly, the Court concludes the ALJ did not err when he relied on the VE's testimony and concluded Plaintiff could perform the jobs of electrical accessory assembler, marker, and small parts assembler during the relevant period because the ALJ provided legally sufficient reasons based on substantial evidence in the record for doing so.

16 – OPINION & ORDER

## CONCLUSION

Based on the foregoing, the Commissioner's decision is AFFIRMED, and this matter is DISMISSED.

IT IS SO ORDERED.

DATED:_____April 12, 2023_____

*Marco Hernandez*
MARCO A. HERNÁNDEZ
United States District Judge

17 – OPINION & ORDER